UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-24364-CIV-COOKE/GOODMAN

MARIAM GRIGORIAN,

    Plaintiff,

v.

FCA US, LLC,

    Defendant.
_____/

# REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S FIRST AMENDED WITNESS LIST AND TO EXCLUDE EVIDENCE AND TESTIMONY FROM PREVIOUSLY UNDISCLOSED WITNESSES

United States District Judge Marcia G. Cooke has referred to the Undersigned [ECF No. 89] Plaintiff's Motion to Strike Defendant's First Amended Witness List and to Exclude Evidence and Testimony From Previously Undisclosed Witnesses. [ECF No. 183]. Defendant filed a response in opposition and Plaintiff filed a reply. [ECF Nos. 130; 152].

Plaintiff's First Amended Complaint alleges that Defendant FCA US, LLC knowingly and willfully violated the Telephone Consumer Protection Act by making unsolicited prerecorded calls by using purportedly "ringless" voicemail technology to place calls to Plaintiff and members of the putative class to promote its products and services. [ECF No. 33]. The two witnesses at issue have evidence about whether the subscriber of the telephone number provided consent for the single telephone call at issue

in the lawsuit.

Although Defendant listed these two witnesses after the relevant deadlines expired, it disclosed the information as soon as it learned of it. In addition, any potential prejudice to Plaintiff can be eliminated by giving her the opportunity take the depositions of the two witnesses. Therefore, although the discovery deadline has expired, the Undersigned **respectfully recommends** that U.S. District Judge Marcia G. Cooke **deny** the motion, permit Plaintiff to take the depositions of the two witnesses within three weeks if she chooses to do so, permit the parties to file brief supplements to their summary judgment memoranda if the deposition testimony provides evidence which could affect the summary judgment assessment, and enter a costs/fees-shifting mechanism.

In making this recommendation, the Undersigned notes that Judge Cooke recently entered orders granting in part Plaintiff's motion to continue the trial and rescheduling the trial to the Court's two-week trial calendar period starting November 12, 2019. [ECF Nos. 184; 185].

I.    **Factual Background**

Plaintiff Mariam Grigorian filed this lawsuit on October 22, 2018 and then filed her First Amended Complaint on December 12, 2018. [ECF Nos. 1; 33]. Judge Cooke entered the Trial Scheduling Order on November 5, 2018. [ECF No. 10]. The Order required the parties to furnish their fact witness lists by December 20, 2018 and to complete all fact discovery by March 20, 2019. Both Plaintiff and Defendant filed their witness lists before the deadline.

On April 5, 2019, FCA served its First Amended Witness List, which identified for the first time, Infutor Data Solutions and One Technologies, LLC as new fact witnesses. Plaintiff filed her motion to strike on April 9, 2019, arguing that "Defendant had not previously identified these witnesses in its initial disclosures, written discovery responses or at deposition." [ECF No. 89, p. 2].

In her motion, Plaintiff alleges that she has been "severely prejudiced" by FCA's "untimely and unexplained witness disclosure." *Id.* She says she has "no idea who or what the two untimely identified corporations are or what documents they might have." *Id.* Her motion seeks an order striking Infutor Data Solutions and One Technologies from FCA's First Amended Witness List and precluding FCA from using any evidence or testimony from these two witnesses at trial, in opposition to her summary judgment motion and motion for class certification, and in support of any other dispositive or pretrial motion which FCA might file.

FCA's opposition memorandum contends that Plaintiff's motion is "a sham based on deliberate misrepresentations to this Court." [ECF No. 130, p. 1]. It says that her primary contention -- that she has "no idea" why FCA served an amended witness list identifying Infutor and One Technologies -- is "flat-out false." *Id.* According to FCA, it has "repeatedly" and "throughout this entire case" told Plaintiff that FCA believed consent for the call had been obtained from the subscriber of the telephone number, but that it lacked any direct information about the specific manner in which consent was obtained because a

third-party vendor (Third-Party Defendant Mudd, Inc.) handled all aspects of the ringless voicemail campaign at issue. [ECF No. 130, pp. 1-2].

FCA's opposition also explained that determining why the number was included in the campaign and locating the original source for consent had turned out to be difficult because of the "multiple layers of 'sub-vendors' that were used by Mudd." [ECF No. 130, p. 2]. Nevertheless, FCA's opposition noted, it "always kept Plaintiff fully informed regarding what it had learned." *Id.*

In further support of that theme, FCA provided more specific information about the circumstances underlying its acquisition of the new witness information and the steps it took to forward that information to Plaintiff:

> [E]ven *before* FCA US served its amended witness list, and *before* Plaintiff filed her current motion, FCA US had *already*: 1) notified Plaintiff that it had been contacted by counsel for one of Mudd's sub-vendors, Alesco Data Group, who indicated that the actual subscriber for the 7883 number (Hovhannes Grigorian) had provided that number while utilizing the www.freecreditclick.com website at which time he consented to be contacted on his "mobile devices" regarding the "products and services of third parties"; 2) provided Plaintiff's counsel a copy of the freecreditclick.com website, as well as a copy of the consent language on the website that Hovhannes Grigorian had agreed to; 3) told Plaintiff's counsel that Alesco believed one of its sub-vendors, Infutor, was the entity in possession of information that could confirm the consent given by Hovhannes Grigorian, and that One Technologies was the entity listed as operating the website; and 4) told Plaintiff's counsel that Alesco and Infutor were working to confirm and supply actual evidence of the consent that was given.

*Id.* (emphasis in original).

FCA also explained that it did not have detailed information about how persons

4

were identified or how their consents were obtained because Mudd independently handled virtually all aspects of the ringless voicemail campaign. FCA also submitted an affidavit [ECF No. 130-1] from one of its attorneys, who provided a detailed outline of the events leading up to the addition of the two witnesses to the defense witness list. The declaration and memorandum together provide a substantial amount of additional background not discussed in Plaintiff's motion (perhaps because she and her counsel were not aware of all the background steps which FCA had taken in an effort to track down information about the circumstances underlying the consent). The Undersigned considers this additional background significant and will quote the relevant portion:

> During the course of discovery, Mudd was unable to identify or produce specifics as to the consent-related information for the ringless voicemail campaign. *See* Azar Decl., at Exhibit D. Mudd disclosed, however, that the names and telephone numbers utilized were obtained from one of Mudd's sub-vendors, Alesco. *See id.* at Exhibit C. Alesco was subpoenaed to produce documents relating to consent and the source of its information, and while that entity produced documents the same day its CEO was deposed (March 19, 2019), it did not provide information or documents regarding consent at that time. *Id.* at ¶ 6.
>
> On March 26, 2019, Alesco's counsel informed FCA US that it had spoken to one of its sub-vendors, identified during the call only as "Infutor," and that it was believed the source of the 7883 number and associated consent had been found. Azar Decl., ¶ 7. Alesco's counsel revealed, for the very first time, that the 7883 number was obtained when a "Hovhannes Grigorian" visited www.freecreditclick.com and agreed to be contacted during this visit. *Id.* Alesco's counsel stressed during the call that this information had not yet been verified, but indicated that Alesco and/or its sub-vendor would be able to provide more information once they had investigated further. *Id.*
>
> A week later, FCA US had not received any confirmation or further information from Alesco's counsel. *Id.* at ¶ 8. Nevertheless, on April 3, 2019,

FCA US's counsel informed Plaintiff's counsel about what they had been told and emailed Plaintiff's counsel a copy of the www.freecreditclick.com website and that website's Privacy Policy (which details the terms of the consent that had been given). *Id.*; *see also id.* at Exhibit E. On April 5, 2019, out of an abundance of caution and to ensure that it complied with this Court's scheduling order, FCA US served an amended fact witness list disclosing Infutor's and One Technologies' contact information. *See* ECF #89-1. On April 9, 2019 (the same day Plaintiff filed the instant motion), FCA US summarized the information that it had *already* provided to Plaintiff's counsel in an email:

> "As I explained at the [April 3] mediation and afterwards to you and Scott, Alesco has informed us that it very recently discovered new information indicating that Plaintiff or her father (the subscriber on the 7883 number) consented to receive communications. Alesco worked with Infutor to obtain the 7883 number and consent information, and One Technologies is the entity that operates the 'free credit click' website where (I have been informed) consent was obtained, which I provided to Scott at the mediation. My understanding is that Alesco will be providing further information and documentation to all parties shortly. You are correct that I have not yet received the underlying documentation."

*Id.* at Exhibit F.

Infutor provided FCA US a declaration confirming the consent information on April 16, 2019. *Id.* at ¶ 10. FCA US immediately produced that declaration to Plaintiff's counsel, and served supplementary initial disclosures incorporating the information contained therein, three hours later. *Id.* The next day, Alesco also served the declaration as a supplemental production in response to the prior subpoena it had received. *Id.* at ¶ 11.

[ECF No. 130, pp. 3-4].

## II. The Parties' Contentions and Arguments

### a. FCA's Position

FCA points out that the parties' joint pretrial stipulation and trial witness lists are not even due. When FCA filed its opposition memorandum on April 23, 2019, the

applicable scheduling order [ECF No. 10] imposed a July 5, 2019 deadline for the stipulation and witness lists, but the Court's amended trial scheduling order [ECF No. 185] now has a September 27, 2019 deadline.

FCA also points out that Local Rule 16.1(i) ("Newly Discovered Evidence or Witnesses") specifically authorizes the use of evidence or witnesses discovered after the pretrial conference if allowed by the Court in furtherance of the ends of justice.

Moreover, FCA contends that the evidence is relevant, was previously unknown to it, that there is time before trial to schedule supplemental depositions, and that no prejudice to Plaintiff would result if she pursued supplemental discovery with leave of Court. Alternatively, FCA says that the delay in disclosure was substantially justified or is harmless.

To support its argument, FCA points to the factors used to analyze a delayed discovery issue under Federal Rule of Civil Procedure 37(c)(1) and FCA contends that all five factors weigh against exclusion of testimony or evidence: (1) a claim of surprise is "nonsensical" because FCA consistently advised Plaintiff of its belief that consent existed; (2) even if surprise existed, a cure was readily accessible through a request to take two additional depositions; (3) there is no possibility that the new witnesses would disrupt the trial because trial is not scheduled until November 12, 2019; (4) the evidence is crucial because valid consent by the subscriber of the number at issue is fatal to Plaintiff's claims; and (5) the explanation for the timing of the disclosure is precisely the type of scenario

7

which courts have held do not justify exclusion. [ECF No. 130, pp. 8-9].

As an additional factor, FCA also argues that there is no evidence of willful deception or flagrant disregard of a court order by FCA, though it says, "the only deception or improper conduct even arguably being perpetrated here is by Plaintiff." [ECF No. 130, p. 9].

   b. <u>Plaintiff Grigorian's Position</u>

First, Grigorian argues that FCA failed to conduct non-party discovery to support its purported consent defense during the discovery period. Thus, she contends that FCA cannot rely on the theory that it learned about the witnesses late.

Specifically, she notes that FCA was aware of Alesco and the role it played as early as January 7, 2019, when it identified Alesco as the source of the leads lists to which the calls at issue were sent.

According to Plaintiff,

> FCA served no written discovery on Mudd regarding Alesco, nor did it even attempt to serve a subpoena on Alesco. A simple discovery request, subpoena, or telephone call to Alesco (a vendor of its vendor) would have revealed Infutor and One Technologies as additional parties with relevant information. Tellingly, Defendant fails to address why it felt it was unnecessary to serve discovery or subpoenas pertaining to Alesco, despite knowing that Alesco had relevant information regarding one of Defendant's supposed key defenses to this lawsuit. If it is true that Defendant did not find out about allegedly case dispositive discovery until after the discovery cutoff, that is simply a product of Defendant's own failure to conduct basic discovery.

[ECF No. 152, p. 2].

8

Second, she also faults FCA for not seeking a discovery extension to permit it to complete its investigation and for not seeking leave to serve the amended witness list.

Third, Grigorian argues that it is a "highly suspicious coincidence that FCA, despite supposedly knowing the entire time that it had a consent defense, was only able to find some purported semblance of documentation in support of its defense after the discovery cut-off." [ECF No. 152, p. 2].

Fourth, she suggests that FCA is overstating its position, noting that FCA should have made some effort to obtain the information if it was actually so critical to the defense case.

Fifth, Plaintiff notes that *she*, not FSA, actively sought discovery from Alesco and noticed the deposition of Alesco's corporate representative.

Therefore, Plaintiff argues, the Court should not reward FCA's preventable delay, especially when she will suffer "severe prejudice." [ECF No. 152, p. 2].

Sixth, Plaintiff contends that FCA's tardy witness disclosures are prejudicial because she has not had the opportunity to conduct any discovery about the two new witnesses.

Seventh, she contends that FCA's failure to provide the disclosures was not substantially justified but, rather, was "a direct result of inadequate discovery efforts." [ECF No. 152, p. 3].

Finally, Plaintiff argues that permitting FCA to use the two witnesses would "reward Defendant with the opportunity to sandbag Plaintiff in dispositive and class

9

certification motions, and at trial." *Id.*

### III.  Applicable Legal Principles and Analysis

Excluding evidence, especially "critical evidence," is an "extreme sanction, not normally to be imposed absent a showing of willful deception o[r] 'flagrant disregard' of a court order by the proponent of the evidence." *Catalina Rental Apartments, Inc. v. Pac. Ins. Co., Ltd.*, No. 06-20532-CIV, 2007 WL 1050634, at *3 (S.D. Fla. Apr. 3, 2007) (citing *Quinn v. Consol. Freightways Corp. of Del.*, 283 F.3d 572, 576 (3d Cir. 2002)). "Striking witnesses or evidence in response to a discovery violation is a drastic remedy that should only be considered after other alternatives are exhausted or unavailable, and clearly only when the moving party has suffered irreparable harm or undue prejudice." *Lamothe v. Bal Harbour 101 Condo. Ass'n, Inc.*, No. 05-23106-CIV, 2007 WL 781909, at *1 (S.D. Fla. Mar. 13, 2007) (citing *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995)).

As a general matter, courts "vastly prefer[ ] to decide cases on their merits, rather than exclude evidence" because "the exclusion of evidence is an extreme sanction." *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10-CV-891-J-37JBT, 2011 WL 5357833, at *3, *5 (M.D. Fla. Nov. 3, 2011) (internal citation omitted). In lieu of excluding evidence entirely, Federal Rule of Civil Procedure 37(c)(1) provides that a court may impose lesser penalties, such as "requiring payment of reasonable attorney's fees and expenses." *Catalina Rental Apartments, Inc.*, 2007 WL 1050634, at *3 (citing Fed. R. Civ. P. 37(c)(1)); *see also Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 11-21163, 2012 WL 12862811,

at *1 (S.D. Fla. Nov. 2, 2012) (granting motion to compel Plaintiffs to produce a valve even though the discovery deadlines expired months earlier but imposing conditions).

Federal Rule of Civil Procedure 37(c)(1) provides that a party is not allowed to use new witnesses and evidence not timely disclosed in discovery "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To determine whether a nondisclosure or delayed disclosure was substantially justified or harmless, the Court considers "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Al-Ghena Int'l Corp. v. Radwan*, No. 13-61557-CIV, 2016 WL 8203480, at *1 (S.D. Fla. 2016) (quotation omitted); *see also Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012), *aff'd*, 523 Fed. App'x 580 (11th Cir. 2013); *Two Men & a Truck Int'l, Inc. v. Residential & Commercial Transp. Co., LLC*, No. 08-cv-67-WS/WCS, 2008 WL 5235115, at *2 (N.D. Fla. 2008).

Courts evaluating motions to exclude late-disclosed witnesses and evidence often evaluate the reason for the delay (i.e., innocent or strategic) and often conclude that exclusion would be excessive when the information is promptly disclosed and when the delay was not caused by a willful plan to generate prejudice. *See, e.g., Al-Ghena Int'l Corp.*, 2016 WL 8203480, at *2 (denying motion to exclude newly discovered emails because the

failure to produce them earlier "appears to be innocent" and the result of running incorrect search terms); *Rosario v. Labor Ready Southeast, Inc.*, No. 14-21496, 2015 WL 12086099, *3-4 (S.D. Fla. Aug. 31, 2015) (denying motion to exclude records that were only located after the close of discovery); *Johnson v. R.J. Reynolds Tobacco Co.*, No. 2:12-cv-618, 2014 WL 1930392, at *2-4 (M.D. Fla. May 14, 2014) (holding exclusion of newly disclosed witnesses would be improper because plaintiff "disclosed the witnesses when they first became known to him, and . . . [thus] satisfied his Rule 26[] obligations"); *Harrison v. Burlage*, No. 08-80989, 2009 WL 3048687, at *2-3 (S.D. Fla. Sept. 18, 2009) (finding that disclosure of 13 witnesses after court's deadline for doing so, including two witnesses who were not disclosed until after the discovery cutoff, was "substantially justified" because plaintiffs "had no knowledge of the relevancy of those witness[es], or even their existence at that time").

Concerning the issue of surprise to Plaintiff, it seems as though FCA had for some time advised Plaintiff of its intent to rely on a consent defense and that it was awaiting further evidence from the third-party vendors. Consequently, Plaintiff may not have specifically known that the two sub-vendors were the ones who obtained the consent, but she was aware of the defense and that FCA was seeking to track down the identities of the witnesses from the vendor. This factor is therefore slightly in FCA's favor.

Second, to the extent that Plaintiff was surprised, the Court may cure the surprise by permitting her to take the depositions of the two witnesses. This is permissible and seems unlikely to generate any undue prejudice to Plaintiff (given that the trial has been

continued for several months).

Courts have "broad discretion" in managing their cases. *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). This broad discretion includes the management of "pretrial activities" such as "discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). Because "[d]istrict courts are entitled to broad discretion in managing pretrial discovery matters" the Eleventh Circuit will only review a district court's ruling on a motion to compel "for abuse of discretion." *McBride v. Rivers*, 170 Fed. App'x 648, 658-59 (11th Cir. 2006); *see also Allianz Global Risks U.S. Ins. Co. v. Singlesource Roofing Corp.*, No. 2:05CV603FTM29SPC, 2006 WL 5112608, at *1 (M.D. Fla. Nov. 14, 2006) (granting motion to compel deposition dates after the discovery period had passed); *Miami Yacht Charters, LLC*, 2012 WL 12862811, at *4 (affording relief to defendant to pursue discovery and noting that there was ample time for additional discovery).

Third, the trial would not be disrupted. The deposition discovery which Plaintiff would be permitted to take (assuming that Judge Cooke were to adopt this Report and Recommendations) would occur long before trial.

Fourth, the evidence is undoubtedly important, so this is another factor mitigating against exclusion.

Fifth, the Undersigned is not persuaded by Plaintiff's theory that FCA was engaged in discovery shenanigans. The Undersigned does not find it "highly suspicious" that the

disclosure was made when it was made. *See Miami Yacht Charters, LLC*, 2012 WL 12862811, at *3.

To be sure, it would have been better had FCA tacked down the identities of the two consent-related witnesses before the discovery period ended. Nevertheless, any potential prejudice can be easily eliminated by permitting Plaintiff to take the depositions of the two witnesses and by allowing the parties to amend their summary judgment and class certification memoranda to address evidence obtained during the depositions. If Plaintiff is required to modify her briefing on the summary judgment or class certification motions, then FCA shall pay the attorney's fees and costs she incurred within two weeks of receiving an invoice from Plaintiff's counsel.

**IV. Conclusion**

The Undersigned **respectfully recommends** that Judge Cooke (a) **deny** Plaintiff's motion to strike; (b) permit Plaintiff to take the depositions of the two witnesses; (c) authorize the parties to amend or supplement the briefing on their summary judgment motion and class certification motions; and (d) require Defendant to pay the fees and costs Plaintiff incurs within two weeks of receiving an invoice from Plaintiff's counsel.

**V. Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Marcia G. Cooke. Each party may file a response to the other

party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, Miami, Florida, on July 2, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record

15