UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-24364-CIV-COOKE/GOODMAN

MARIAM GRIGORIAN,

      Plaintiff,

v.

FCA US, LLC,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS
ON DEFENDANT'S MOTION FOR BILL OF COSTS**

Plaintiff Mariam Grigorian brought this lawsuit as a putative class action under the Telephone Consumer Protection Act ("TCPA"). [ECF No. 33]. During the pendency of the case, the Eleventh Circuit issued *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), which directly impacted Plaintiff's Article III standing. Defendant FCA US, LLC provided the opinion to the Court. [ECF No. 226]. Because a federal court has "the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exists arises," *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985), the Court scheduled the matter for a hearing. [ECF No. 235]. After the hearing, the Court dismissed the case. [ECF No. 237]. Plaintiff appealed the ruling. [ECF No. 239]

While the appeal was pending, Defendant filed a timely motion for costs [ECF No.

248], which was stayed pending resolution of the appeal. [ECF No. 251]. After the Court's ruling dismissing the case was affirmed, s*ee Grigorian v. FCA US LLC*, 838 F. App'x 390 (11th Cir. 2020), the Court issued a scheduling Order for briefing on Defendant's motion for costs. [ECF No. 261]. The parties complied with the Court's Order and Defendant filed its renewed motion [ECF No. 262]; Plaintiff filed a response [ECF No. 263]; and Defendant filed a reply [ECF No. 264]. United States District Judge Marcia G. Cooke referred the matter to the Undersigned. [ECF No. 6].

Defendant seeks to tax $66,168.17 in costs pursuant to 28 U.S.C. § 1919, arguing that an award of these costs is "just." [ECF No. 262]. Plaintiff provides three alternatives she believes to be more appropriate: (1) deny Defendant's request because Plaintiff operated in good-faith and had filed the action in state court, rendering the award of any costs inequitable and unjust (and noting that Defendant can recover its costs in state court); (2) limit Defendant to costs which are taxable under 28 U.S.C. § 1920 because Defendant failed to comply with Local Rule 7.3(a); or (3) limit costs to those which she believes pertain only to the Article III standing issue. [ECF No. 263]. Defendant claims, in its reply, that (1) this forum is more appropriate than state court to address this issue; (2) Plaintiff misunderstands Local Rule 7.03(a); (3) many aspects of the litigation had an impact on the Court's ruling. [ECF No. 264].

For the reasons stated below, the Undersigned **respectfully recommends** the District Court **grant in part** and **deny in part** Defendant's motion to tax costs and award

it **$4,056.75** in taxable costs ($62,111.42 less than the requested amount).

## I.      Legal Standard

28 U.S.C. § 1919 allows a court to award costs after it determines it lacks jurisdiction to hear the case, providing, in pertinent part: "Whenever any action or suit is dismissed in any district court . . . for want of jurisdiction, such court may order the payment of just costs." 28 U.S.C. § 1919; *see also Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 387 (1884) ("These provisions were manifestly designed to avoid the application of the general rule, which, in cases where the suit failed for want of jurisdiction, denied the authority of the court to award judgment against the losing party, even for costs.").

"Determining whether 'just costs' should be awarded under 28 U.S.C. § 1919 is a matter within the sound discretion of the district court." *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, No. 10-20116-CIV, 2011 WL 13220168, at *2 (S.D. Fla. Sept. 9, 2011), *report and recommendation adopted*, No. 10-20116-CIV, 2011 WL 13220169 (S.D. Fla. Sept. 27, 2011); *see also Miles v. California*, 320 F.3d 986, 988 n.2 (9th Cir. 2003) (noting that § 1919 "is permissive"); *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1339 (10th Cir. 1998) (applying § 1919 and observing that "[t]he taxing of costs rests in the sound judicial discretion of the district court").

While "just costs" under § 1919 are different than the taxable costs available to the prevailing party under 28 U.S.C. § 1920, courts have found the standards applied under § 1920 are useful in interpreting which costs are "just." *Callicrate*, 139 F.3d at 1339 ("[I]n

the instant case we are dealing with what are 'just costs' under 28 U.S.C. § 1919, and not with costs allowed under § 1920 or Fed.R.Civ.P. 54(d). Nevertheless the standards applied under § 1920 are helpful, we feel."); *Ericsson v. Motorola*, 179 F.R.D. 328, 330 (N.D. Ala. 1998) ("[§] 1920 and Rule 54(d)(1) may provide some help in determining under § 1919 what costs are 'just.'").

For reference, § 1920 permits taxation of the following costs against the losing party:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

## II.     Compliance with the Local Rules

Plaintiff first asks this Court to limit Defendant to costs enumerated under § 1920 because of Defendant's failure to comply with Local Rule 7.3(a). Specifically, Plaintiff claims that Defendant failed to comply because it did not serve its motion on Plaintiff thirty days before *filing* the motion. Defendant correctly points out that Plaintiff misreads Local Rule 7.3(a), which, referencing 7.3(b), requires the party seeking nontaxable costs to serve the motion at least thirty days before the *deadline for filing* the motion. However,

despite Defendant's correct recitation of the rule, its claim of initial compliance is incorrect.

The Court dismissed the case on December 13, 2019. [ECF No. 237]. Local Rule 7.3(a)(1) requires that motions for non-taxable expenses and costs "be filed and served within sixty (60) days of the entry of the final judgment or order giving rise to the claim, regardless of the prospect or pendency of supplemental review or appellate proceedings . . . ." Local Rule 7.3(a)(1). Defendant filed its first motion for costs [ECF No. 248] on February 3, 2020. Before filing its costs motion, Defendant provided a copy of its motion to Plaintiff on January 13, 2020, and its supporting documents on January 16, 2020. [ECF No. 263].

Defendant contends that because Plaintiff, after the dismissal, filed a notice of appeal and a motion for leave to file an amended complaint, one of those dates operates as the date Local Rule 7.3(a)'s clock began ticking and the earliest date its motion was due was February 14, 2020. Defendant's position, however, is undermined by the very case it cites as support. *Snow v. Boston Mut Life Ins. Co.* supports Defendant's position based on the Local Rules in the *Middle District of Alabama*, but states as a general principle, "Rule 54(d), however, does not impose a specific deadline on the prevailing party by which to file a motion for costs; instead, the rule leaves it up to district courts' local rules to fill in the gap." No. 3:11-cv-813, 2014 WL 6411879, at *2 (M.D. Ala. Feb 19, 2014). Unlike Alabama, this District's Local Rule begins the sixty period on the date of the order,

"regardless of the prospect or pendency of supplemental review or appellate proceedings." Local Rule 7.3(a).

Therefore, Defendant's motion for costs was due sixty days after December 13, 2019, which was February 11, 2020. Accordingly, under Local Rule 7.3(b), the motion (with accompanying invoices) was due on January 12, 2020. Because January 12, 2020 was a Sunday, Defendant was required to serve its motion on Plaintiff by January 10, 2020.[1] Therefore, Defendant's motion was served on Plaintiff three days late under the Local Rules (and the accompanying invoices were served six days late).

Local Rule 7.3(b) does not provide the "aggrieved" party a specific remedy when the party seeking the nontaxable costs fails to comply with its provision. Nor does the Undersigned believe any remedy is necessary in these unique circumstances. Defendant sent its initial motion and invoices to Plaintiff at least 24 days before the deadline to file. Moreover, as a result of the Court's stay, Plaintiff was afforded over a year of notice with which to communicate and confer with defense counsel before litigating the motion on the merits.

---

[1]      Federal Rule of Civil Procedure 6(2)(c)(5) states,

[I]f the period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday . . . . The 'next day' is determined by continuing to count forward when the period is measured after an event and backward when measured before an event.

Fed. R. Civ. P. 6(2)(c)(5)

Plaintiff offers *Mata Chorwadi, Inc. v. City of Boynton Beach*, 19-cv-81069, 2021 WL 1217914 (S.D. Fla. Apr. 4, 2021) in support of its position that Defendant's initial failure to comply with Local Rule 7.3(b) justifies limiting it to costs allowed under § 1920. However, the situation in *Mata Chorwadi* is much more extreme than the instant situation and contains none of the mitigating factors present here. In *Mata Chorwadi*, the parties had a history of failing to confer, even after being ordered to do so by the court, could not get along, cooperate, or see the forest for the trees. 2021 WL 1217914, at *3.

In contrast, here, Plaintiff was given more than a year to review Defendant's motion and invoices and there is no allegation it has been prejudiced in any capacity.

## III.    Analysis

Turning to the merits of Defendant's motion, Plaintiff seeks to have this Court deny Defendant's request outright based on two alternative grounds: (1) Plaintiff filed its suit in good faith and, thus, no costs are "just" or (2) because Plaintiff has filed this action in state court, costs should be left to the state court. Plaintiff also requests, if the Court chooses to award Defendant any costs, that it do so in line with § 1920 because Defendant's requests are excessive. First, the Undersigned will address the contrasts between § 1919 and § 1920; then, using those principles, I will discuss the arguments.

### A.    <u>Contrast between § 1919 and § 1920</u>

The party obtaining a dismissal on jurisdictional grounds is not entitled to prevailing party status. *Ffrench v. Ffrench*, 418 F. Supp. 3d 1186, 1190 (S.D. Fla. 2019)

("Dismissals for lack of subject matter jurisdiction . . . or dismissals without prejudice in general, usually do not qualify parties for prevailing party status."); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) . . . and "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits.").

An award of costs in a case dismissed for lack of jurisdiction is governed by 28 U.S.C. § 1919, which states, "[w]henever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs." 28 U.S.C. § 1919.

As the Ninth Circuit has explained, this distinction removes from § 1919 the presumption afforded by § 1920 via Federal Rule of Civil Procedure 54(d):

> § 1919 stands in stark contrast to costs under Rule 54(d), which turns on a prevailing party standard. *See Miles v. California*, 320 F.3d 986, 988 (9th Cir. 2003) ("Because Rule 54(d)(1) states that costs 'shall' be allowed 'as of course,' there is a strong presumption in favor of awarding costs to the prevailing party."). The court's authority under § 1919 was "manifestly designed to avoid the application of the general rule, which, in cases where the suit failed for want of jurisdiction, denied the authority of the court to award judgment against the losing party, even for costs." *Mansfield, C. & L.M. Ry. V. Swan*, 111 U.S. 379, 387 (1884). But the mere fact that authority is now granted does not mean that costs are mandated. *See Miles*, 320 F.3d at 988 n. 2.

*Otay Land Co. v. United Enters. Ltd.*, 672 F.3d 1152, 1157-58 (9th Cir. 2012) (cleaned up).

Thus, while the prevailing party is afforded a presumption in favor of awarding those costs enumerated under § 1920, *see Woods v. Deangelo Marine Exhaust, Inc.*, No. 08-81579, 2010 WL 4116571, at *1 (S.D. Fla. Sept. 27, 2010), "[a]n award of costs under § 1919 is discretionary," *Rabco Corp. v. Steele Plaza, LLC*, No. 16-cv-1858, 2019 WL 5188601, at *16 (M.D. Fla. July 29, 2019). Nevertheless, § 1920's provisions are a useful guide when assessing whether costs should be awarded. *Callicrate*, 139 F.3d at 1339.

Defendant, in seeking costs, urges the Undersigned to take the view that § 1919's lack of limitations should be read to mean it allows for broader recovery than what is prescribed by § 1920. While § 1919 can allow broader recovery, the permissive language within the statute also allows the court to award costs more narrowly than it might under § 1920. *See Al v. Prestige Window & Door Installation, LLC.*, 626 F. Supp. 2d 1259, 1262 (S.D. Fla. 2009) ("[§ 1919's] statutory language alone, then, gives the Court leeway to award costs or not award costs as it sees fit.").

## B.     Plaintiff's Pending State Court Suit and Good Faith Belief

Plaintiff is currently pursuing identical claims in state court. Because of this, Plaintiff asks this Court to deny Defendant costs and allow the issue to be addressed at the conclusion of the state court litigation. Defendant highlights Plaintiff's failure to provide any authority demonstrating Defendant could recover its costs from *this case* if it were to prevail in state court.

Florida law, in fact, seems to indicate that Defendant may not be able to recover all or any the costs expended obtaining the dismissal in this action. Plaintiff has indicated that Defendant, as it did in this case, is seeking dismissal based on Plaintiff's lack of standing. While Plaintiff directs the Court's attention to Florida Statute § 57.041[2] (the statute which address costs after judgment), if Defendant were to obtain another jurisdictional dismissal, then its costs would be assessed under Florida Rule of Civil Procedure 1.420(d).

In interpreting Rule 1.420(d), the Florida Supreme Court observed:

> Costs are not assessed by the court in which subsequent litigation is commenced; rather, rule 1.420(d) provides that costs are to be assessed immediately after a dismissal is entered by the court issuing the voluntary dismissal and that any subsequent lawsuit on the same claim must be stayed by the second court until all of the costs awarded in the initial lawsuit are fully paid. *See City of Hallandale v. Chatlos*, 236 So.2d 761, 763 (Fla. 1970) (construing rule 1.420(d) "to mean that costs, including attorneys' fees, are to be assessed and judgment entered for them in the same action which is the subject of voluntary dismissal").

*Caufield v. Cantele*, 837 So.2d 371 (Fla. 2002). Applying this principle, when addressing a pending case that had been previously dismissed, Florida appellate courts have declined to award costs for the litigation expenses incurred in the prior case. *MK Enters., LLC v. Wolfe*, 844 So. 2d 563 (Fla. 3d DCA 2003).

---

[2]   Both parties incorrectly cite the relevant statute as Florida Statute 57.401, a statute which does not exist. Moreover, Defendant incorrectly attributes to this non-existent statute the quote "accruing in each action." [ECF No. 264, p.2]. Florida Statute 57.041, states, in pertinent part, "[t]he party recovering judgment shall recover all his or her legal costs and charges which shall be included in the judgment."

Therefore, if Defendant were successful in obtaining a state court dismissal based on lack of standing, then it would be limited to the costs incurred defending the state action.

Likewise, even if Defendant were to prevail on the merits in state court, as it argues in its reply, there is no guarantee the state court would award it costs spent in defending the instant action. Even if the state court awarded costs, the state court procedure is more exacting and, at times, less fulsome in its prevailing party cost awards. *Compare* 28 U.S.C. § 1920 *with Reeser v. Boats Unlimited, Inc.*, 432 So.2d 1346, n.2 (Fla. 4th DCA 1983) (detailing the Florida Supreme Court's Administrative Order providing guidelines on cost awards, which, in addition to shifting the burden to the prevailing party, limits deposition costs to the costs of the pages used at trial).

Given Florida's legal landscape, the Undersigned is unwilling to grant Plaintiff's request to, in essence, leave the issue to the state court.

Plaintiff next urges the Undersigned to factor Plaintiff's good-faith belief in the viability of its lawsuit in my decision and find an award of any costs would be unjust. However, in advancing this argument, Plaintiff concedes the Court is not prohibited from awarding Defendant costs even if the Undersigned were to find that Plaintiff's suit was objectively reasonable or in good faith. Defendant agrees the Court is not prohibited from awarding costs by a finding the suit was objectively reasonable or filed in good faith, but argues that Plaintiff's suit was, in fact, not objectively reasonable.

11

Examining the appellate decision affirming the dismissal of Plaintiff's claim is helpful in analyzing the reasonableness of Plaintiff's suit. *Ericsson GE Mobile Comm., Inc., v. Motorola Comm. & Elec., Inc.*, 179 F.R.D. 328 (S.D. Ala. 1998) (examining the appellate court's rationale in its analysis of which costs would be just). Here, the Eleventh Circuit did not condemn Plaintiff's suit, nor did it hold that a single ringless voicemail can never violate the TCPA; instead, its decision was fact based, and the dismissal was affirmed on these unique facts and this unique Plaintiff. *See Grigorian,* 838 F. App'x 390.

Additionally, the Court's Order dismissing Plaintiff's case relied on *Salcedo v. Hanna*, 936 F.3d 1162, 1167-68 (11th Cir. 2019). [ECF No. 237]. This was also the case which sparked Defendant's renewed standing argument [ECF No. 226] and the Court's decision to *sua sponte* hold a hearing on standing [ECF No. 235]. It was also referenced heavily in the appellate decision affirming the dismissal. *See generally Grigorian*, 838 F. App'x 390. *Salcedo* was issued on August 28, 2019, which was nearly a year after Plaintiff filed her Complaint. It would hardly be "just" to hold that Plaintiff should have predicted the *Salcedo* ruling and, therefore, acted in bad faith.

Nonetheless, the Undersigned is not going to deny *all* costs merely because Plaintiff's conduct was objectively reasonable. Indeed, in the context of § 1920, even if the non-prevailing party were objectively reasonable in its claim or defense, it would still be required to pay the enumerated costs.

C.      **Costs Appropriate Under the Circumstances of the Instant Case**

While it would be inappropriate, in this situation, to deny Defendant all costs, the circumstances previously discussed (i.e., the pending state court action and objective reasonableness of lawsuit) do serve as a mitigator and justify a substantial reduction in Defendant's requested costs. As will be explained more thoroughly below, if Defendant were to have prevailed *on the merits* of the case, then it would be eligible to receive only costs enumerated under § 1920, which is substantially less than the amount it seeks.

Moreover, certain costs requested by Defendant are indisputably expenditures of convenience or, at times, inappropriate. Examples of these costs include: (1) Rough Draft Transcript, Expedited Transcript, Original Transcript and Video Transcript Synchronization for the single deposition of Randall A Snyder ($2,767.25) [ECF No. 261-1, pp. 42, 47]; (2) Service of *two* same day subpoenas ($460) [ECF No. 261-1, pp. 48-49]; (3) Deposition Preparation of Expert Witness Ken Sponsler ($7,875.00) [ECF No. 262-1, p. 55]; (4) Travel expenses associated with four days of witness interviews and deposition preparation ($3,631.29) [ECF No. 262-1, pp. 5-7, 59-99]; (5) A large Bud Light draft ($9.00) [ECF No. 262-1, p. 67]; and (6) Unidentified reproduction and delivery charges ($3,391.84) [ECF No. 262-1, pp. 10-37].

The "just" approach in this case is to award Defendant the costs it would be otherwise eligible to receive had it prevailed on the merits (i.e., using § 1920 as a guide).

### i. *Deposition Costs*

Defendant requests $14,434.26 in costs associated with six depositions. Plaintiff argues that $10,482.51 in Defendant's requested costs should be denied because it would not be recoverable under § 1920. Defendant does not explain why each deposition-associated-cost was necessary. [ECF Nos. 262; 264]. Instead, Defendant states only that the depositions of these particular witnesses were necessary. [ECF No. 262, p. 5]. Properly determining which costs are appropriate requires an overview of the law involving the discreet costs associated with the six depositions.

### 1. Subpoenas

First, Defendant seeks an award of $460 for service of two subpoenas. [ECF No. 262-1, p. 4]. Plaintiff argues the entirety of the fee should be denied because it "was perfectly willing to produce the expert without a subpoena." [ECF No. 263, p. 4]. Defendant does not respond to Plaintiff's contention. Nor has Defendant offered a justification for incurring $460 in costs to serve two subpoenas on a single person, including the necessity of a combined $250 same-day surcharge. Without any explanation for the heightened expenditure, the Undersigned will limit Defendant to the rate charged by the U.S. Marshal.

Courts in this district have confirmed that service of process fees paid to private process servers are taxable under 28 U.S.C. § 1920(1), provided that the process server's rates do not exceed the fees of the U.S. Marshals to effectuate service. *See Transatlantic Lines, LLC v. Portus, Stevedoring LLC*, No. 14-60528-CIV, 2016 WL 1154796, at *3 (S.D. Fla.

Jan. 13, 2016) (citing *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000)). The United States Marshal's rate to effectuate service is $65.00 per hour for process served, plus travel costs and out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3).

Although Defendant requests payment for two subpoenas, the subpoenas were served on the same day, to the same person, by the same process serving company. Accordingly, the Undersigned **respectfully recommends** awarding Defendant $65.00 for service of process, a $395 reduction in its requested costs.

### 2.   Video and Stenographic Recordings

"The taxation of deposition costs is authorized by § 1920(2)." *W&O, Inc.*, 213 F.3d at 620. The factual question of whether specific deposition and transcript costs are taxable depends on whether the deposition was "necessarily obtained for use in the case." *Id.* at 621; *see also Rodriguez v. Marble Care Int'l, Inc.*, 862 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012). If a deposition cost was incurred merely for convenience, to aid in thorough preparation, or for purposes of investigation only, then the cost is not recoverable. *W&O, Inc.*, 213 F.3d at 620 (internal citations omitted); *see also Rodriguez v. M.I. Quality Lawn Maint., Inc.*, No. 10-21031-CIV, 2012 WL 664275, at *4 (S.D. Fla. Feb. 9, 2012).

Plaintiff objects to the taxation of any costs associated with video recording depositions. [ECF No. 263]. In doing so, she argues that Defendant has failed to explain why both video and stenographic recordings were necessary. *Id.* Defendant's only response is a conclusory allegation that the cost is recoverable under § 1919. Using § 1920

as a guide, the Undersigned finds that Defendant is not entitled to recover any of the costs associated with video recording a deposition.

Under § 1920, "[t]he costs of a videographer may be taxed if the party noticed the deposition to be recorded by non-stenographic means, or by both stenographic and non-stenographic means, and no objection was raised at that time by the other party." *Procaps v. Patheon, Inc.*, No. 12-24356-CIV, 2016 WL 411017, at \*3 (S.D. Fla. Feb. 2, 2016) (citing *Morrison v. Reichold Chem., Inc.*, 97 F. 3d 460, 464-65 (11th Cir. 1996)); *see also PODS Enters.*, 2015 WL 5021668, at \*1 ("[C]osts of videotaping depositions" are "taxable as a part of the cost of a videotaped deposition.").

"However, the party seeking reimbursement must still demonstrate that the transcripts were necessarily obtained for use in the case and where reimbursement for both methods of recording is sought, the prevailing party bears the burden of proving that both methods were necessary." *Perfect Web Techs., Inc. v. Infousa, Inc.*, No. 07-80286-CIV, 2009 WL 2407689, at \*9 (S.D. Fla. Aug. 4, 2009); *see also Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 2009 WL 1210998, \*3 (S.D. Fla. May 1, 2009) (denying duplicative video deposition costs where prevailing party failed to explain why it was necessary to obtain both a videotaped and transcribed copy of depositions).

Defendant has failed to justify the need to obtain both a video and stenographic recording of witnesses' depositions. Therefore, the Undersigned **respectfully recommends** not awarding any costs associated with video recording the depositions.

3.   Expedited and Rough Transcripts

Defendant requests rough transcripts, expedited transcripts, multiple transcripts, or a combination of the three in at least four of the six depositions. [ECF No. 262-1, pp. 39-49]. Plaintiff objects to all costs associated with these extra or otherwise expedited transcripts, making candid and reasonable efforts to separate the costs when the invoice fails to do so. [ECF No. 263]. Defendant fails to justify or explain the necessity of any of these surcharges.

"If an expedited or rough transcript was necessary, the cost is recoverable." *Procaps,* 2016 WL 411017, at *3; *see also Barrera v. Weiss & Woolrich S.*, 900 F. Supp. 2d 1328, 1335 (S.D. Fla. 2012) (finding expedited transcripts were necessary if the depositions occurred within 30 days of a deadline or motion because the short timeframe required expedited services); *Embroidme.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 12-81250, 2014 WL 5325211, at *4, 6 (S.D. Fla. Aug. 20, 2014) (awarding cost of expedited transcripts where, "given the short amount of time" between the deposition and a motion, "the expedited rate was necessary.").

Further, the party seeking costs for an additional copy of a deposition transcript must justify why the additional copy is necessary. *See Rodriguez v. M.I. Quality Lawn Maint., Inc.*, 2012 WL 664275, at *4 (S.D. Fla. Feb. 9, 2012), *report and recommendation adopted,* 2012 WL 664274 (S.D. Fla. Feb. 28, 2012) ("[T]he undersigned concludes that the initial inquiry is whether the certified copy of the deposition obtained was necessarily

obtained for use in this case. In the case at bar, Defendants do not address why a copy of the transcript, in addition to the original, was necessary, nor is such necessity apparent from the record. The undersigned concludes that it was obtained for the convenience of the parties and, thus, is not recoverable.").

Defendant could have explained that expedited transcripts were necessary because the transcript was needed for a dispositive motion. Or Defendant could have explained that a rough draft of the transcript was necessary because the deposition was needed for reference during another deposition the following day. However, Defendant made no effort to explain this and, instead, simply says that the depositions themselves were necessary and related to the issue of standing.

Even if the depositions were necessary, the Undersigned is unconvinced that, in order for Defendant to properly present its standing argument, it *needed* a rough draft transcript, expedited certified and original transcript, video transcript, and synchronized video and written transcript of Randall A Snyder. Nor has it offered why expedited transcripts were needed for any other witness.

Thus, the Undersigned **respectfully recommends** not awarding Defendant any costs associated with expedited or additional transcripts.

### 4. Other Fees

Plaintiff also objects to the deposition costs related to delivery, exhibits copying, exhibit management, litigation packages, conference rooms, and other similar costs.

Defendant offers no additional explanation about why these additional costs were necessary and, again, merely relies on the fact that the costs, when appropriate, are permissible.

"[T]he Court will not award costs for deposition exhibits when the prevailing party 'has provided no information demonstrating that the copies of transcript exhibits were made for anything more than convenience of counsel.'" *Spatz v. Microtel Inns and Suite Franchising, Inc.*, No. 11-60509-CIV, 2012 WL 1587663, at *6 (S.D. Fla. May 4, 2012) (citing *George v. Fla. Dep't of Corr.*, No. 07-80019-CIV, 2008 WL 2571348, at *6 (S.D. Fla. May 23, 2008)).

Nor are physical or electronic delivery charges recoverable as costs under § 1920. *See, e.g., RGF Env't Group v. Activ Tek Env't Corp.*, No. 08-80682-CIV, 2010 WL 3269982, at *3 (S.D. Fla. July 21, 2010) (declining to award costs for delivery charges); *TMH Med. Services, LLC v. Nat'l Union Fire Ins. Co. of Pittsburg*, No. 17-cv-920-Orl-37DCI, 2020 WL 5984040, at *4 (M.D. Fla. Sept. 2020) (declining to award "electronic delivery and handling" costs when necessity was unclear and unsupported by moving party's motion); *Suarez v. Tremont Towing, Inc.*, No. 07-21430-CIV, 2008 WL 2955123, at *3 (S.D. Fla. Aug. 1, 2008) (denying courier handling and delivery fees); *Shire Dev., LLC v. Mylan Pharm., Inc.*, No. 8:12-CV-1190-T-36AEP, 2018 WL 6311472, at *5 (M.D. Fla. Nov. 9, 2018) ("Costs for convenience under § 1920 include . . . shipping and handling, delivery costs,

and express mail . . . shipment of depositions . . . which are incurred for the convenience and not necessity of counsel, are not taxable.").

Moreover, "most courts have found that the costs for shipping, exhibit scanning, disk copies and mini-scripts are not taxable as costs." *Responsible Me, Inc. v. Evenflo Co., Inc.*, No. 06-61736, 2009 WL 528247, at *8 (S.D. Fla. Mar. 2, 2009); *see also Shire Dev., LLC v. Mylan Pharm., Inc.*, No. 8:12-CV-1190-T-36AEP, 2018 WL 6311472, at *5 (M.D. Fla. Nov. 9, 2018) (finding that "expedited or condensed transcripts, scanning, CD litigation packages, summaries, shipping and handling, delivery costs, and express mail . . . court-reporter fees, shipment of depositions, costs for binders, tab, technical labor, and realtime expenses" are costs for convenience under § 1920); *Waste Servs., Inc. v. Waste Mgmt. Inc.*, No. 6:05-cv-320, 2007 WL 1174116, at *4 (M.D. Fla. Apr. 18, 2007) (finding text to video synchronization not taxable).

In addition to the fact that many of these costs are non-taxable on their face, Defendant has also failed to provide necessary details regarding the requested costs. "The party seeking costs must provide sufficient detail and documentation regarding the requested costs so the opposing party may challenge the costs and the court may conduct a meaningful review of the costs." *Johnston v. Borders*, No. 615CV936ORL40DCI, 2017 WL 1968352, at *5 (M.D. Fla. Apr. 24, 2017), *report and recommendation adopted*, No. 615CV936ORL40DCI, 2017 WL 1957278 (M.D. Fla. May 11, 2017) (citing *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000)). "Failure to provide sufficient

detail or supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs." *Id.*

At bottom, because of the lack of specifics or justification, and the seemingly often-duplicative nature of the charges, the Undersigned is unconvinced these costs were for anything more than the convenience of counsel and **respectfully recommends** the District Court **deny** Defendant's request to tax them.

5. <u>Conclusion</u>

Based on the above, the Undersigned **respectfully recommends** reducing Defendant's deposition costs as follows:

1. Mariam Grigorian [ECF No. 262-1, pp. 4, 39, 46]: Original Transcript – 2 day delivery ($810.60), Reporter Appearance Fee/Hour Videotaped ($487.50), Exhibits-Scanned and Hyperlinked-B&W ($434.00), Exhibits-Scanned and Hyperlinked-Color ($24.00), Videographer-1st 2 Hours ($325.00), Videographer-Additional Hours ($632.50), and Shipping and Handling ($105.00). In the aggregate, a reduction of $2,818.60.

2. Alesco Data Group (Michael Sklorenko) [ECF No. 262-1, pp. 4, 40]: Exhibit Management ($104.50), and Delivery and Handling ($35.00). In the aggregate, a reduction of $139.50.

3. Tim Brenden [ECF No. 262-1, pp. 4, 41, 45]: Exhibit Management ($380.65), Rough Draft ($374.00), Videographer-1st 2 Hours ($310.00), Videographer-

Additional Hours ($472.50), and Delivery and Handling ($75.00). In the aggregate, a reduction of $1,612.15.

4. Randall A. Snyder [ECF No. 262-1, pp. 4, 42, 47, 50]: Transcript-Expedited Fee ($686.00), Exhibits- Color ($388.00), Exhibits ($115.70), Conference Call ($55.00), Rough Draft ($551.25), Litigation Package (46.00), Video-Initial Fee ($350.00), Video-Additional Hours ($750.00), Video-Media and Cloud Services ($336.00), Video Digitizing and Transcript Synchronization ($550.00), Shipping and Handling ($84.82), and Conference Room ($645.79). In the aggregate, a reduction of $4,558.56.

5. Ken Sponsler [ECF No. 262-1, pp. 4, 43]: Delivery and Handling ($28.00). A reduction of $28.00.

6. Gary V. Walter [ECF No. 262-1, pp. 4, 44]: Transcript Services ($686.00).,[3] Exhibit Management ($106.70), Veritext Exhibit Package (ACE) ($45.00), and Delivery and Handling ($28.00). In the aggregate, a reduction of $865.70.

---

[3]       The Undersigned was not inclined to award any portion of the transcript fee since the invoice failed to provide the rate, number of pages, or amount associated with expediting the transcript. *See Johnston v. Borders*, No. 615CV936ORL40DCI, 2017 WL 1968352, at *5 (M.D. Fla. Apr. 24, 2017), *report and recommendation adopted*, No. 615CV936ORL40DCI, 2017 WL 1957278 (M.D. Fla. May 11, 2017) ("Failure to provide sufficient detail or supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs."). However, Plaintiff concedes $437.30 of the cost is recoverable based on the itemized expedited transcript fees found elsewhere in Defendant's submission.

In total, the Undersigned **respectfully recommends** the District Court **grant** Defendant's request in part and award it $4,016.75 in costs associated with the six depositions, an overall reduction of $10,417.51 from the requested amount.

### ii. Expert Fees

Defendant seeks to tax $31,649.48 in expert witness fees associated with its expert, Ken Sponsler, and Plaintiff's expert, Randall A Snyder. [ECF No. 262]. Plaintiff contends Defendant should be limited to costs otherwise taxable under § 1920 or should be prohibited from obtaining the fees entirely because the expert witnesses were unrelated to the issue on standing. Defendant replies that the expert witness testimony was key to its standing argument and notes that courts have awarded expert fees as "just" under § 1919.

As support for its position, Defendant provides *Health Sci. Distribs., Co. v. Usher-Sparks*, Case No. 10-cv-1797, 2012 WL 12918262, at **1-3 (M.D. Fla. June 20, 2020) and *Steelman v. Ringhaver Funding, LLC*, Case No. 11-cv-1283, 2012 WL 4377839 (M.D. Fla. Sept. 5, 2012). Each of these cases contain stark factual differences from the instant scenario.

In *Usher-Sparks*, the Court awarded $7,602.96 for expert fees because the defendants

> hired an expert witness to support their motions to dismiss for insufficiency of service of process pursuant to the undersigned's statement that "further development of British law, preferably through the sworn statement of an

individual with training and experience in British law," would be necessary
for the Court to determine certain issues related to service of process.

2012 WL 12918262, at *3. In contrast, here, there was no such request by the Court for

either side to present any specific expert testimony. Moreover, the defendants in *Usher*

*Sparks* requested less than 25% of the amount Defendant seeks to obtain in this action.

Likewise, in *Steelman*, the Court found it "just" to award $400 in expert fees, a

miniscule sum compared to the amount Defendant is seeking. 2012 WL 4377839, at *3.

While the courts in those cases may have found it just to award $400 in costs or

costs associated with expert testimony the court requested the party provide, it would be

unjust to award Defendant a windfall sum in costs which would be otherwise disallowed

from obtaining had it prevailed on the actual merits. *See Rabco Corp v. Steele Plaza, LLC*,

16-cv-1858, 2019 WL 5188601, at *18 (M.D. Fla. July 29, 2019) (finding it would be unjust

to award expert witness fees because the defendant would not be entitled to them if it

had prevailed on the merits).

The Undersigned will therefore look to § 1920 for guidance. § 1920(3) explicitly

carves out taxation of witness fees. The only limit on the prevailing party's recovery is

the provision of 28 U.S.C. § 1821(b), which caps recovery at $40.00 a day. *See Morrison v.*

*Reichhold Chems., Inc.*, 97 F.3d 460, 463-64 (11th Cir. 1996); *see also James,* 242 F.R.D. at 651

("A witness who appears before a federal court or before any person authorized to take

his deposition pursuant to any rule or order of a court of the United States is entitled to

fees and allowances, including an attendance fee of $40 per day for each day's

attendance."). Notably, this provision does not allow for recovery of expert witness fees incurred in issues unrelated to attendance at deposition or trial. *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("[E]xpert witness fees . . . are clearly nonrecoverable); *Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285, 1289 (11th Cir.1983) ("[A]dditional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in federal courts.")

Reviewing Defendant's submissions [ECF No. 262-2, pp. 4, 52-58] reveals that the only cost it incurred paying a witness to attend a deposition or trial was the $4,200.00 expenditure to take Randall Snyder's deposition on April 17, 2019. Accordingly, I **respectfully recommend** the District Court award Defendant $40.00 in costs associated with its Expert Fees, a reduction of $31,609.48.

### iii.   Travel Expenses

Defendant next requests $16,692.59 in costs associated with travel (air and ground), lodging, and meal expenses incurred in the litigation. Plaintiff again asks the Court to deny Defendant's request outright or, instead, to limit it to the costs associated with Plaintiff's deposition. Defendant replies that these costs are taxable and would be just.

Defendant supplies the following three cases in support of its argument that it would be just to tax its travel-related costs: *Rabco Corp*, 2019 WL 5188601; *U.S. ex rel*

*DeKort*, No 06-cv-1792, 2013 WL 1890283 (N.D. Tex. Mar. 27, 2013); and *Castillo Grand LLC v. Sheraton Operating Grp.*, No. 09 Civ. 7197, 2010 WL 5298179 (S.D.N.Y. Dec. 23, 2010).

Defendant's cases either provide no analysis on the issue or do not stand for the proposition for which Defendant cites the case.

*Rabco Corp.* mentions that the defendant sought travel costs and states that it is awarding costs only for the deposition transcript and videographer fees. 2019 WL 5188601, at *3 ("The undersigned therefore recommends that Steele be awarded costs in the amount of $7,543.58, which includes the deposition transcript and videographer fees for Mr. Beattie and Mr. Libhart, and 50% of the allowable deposition transcript fee for Mr. Riehm."). Thus, it appears the *Rabco Corp.* defendant was *not* awarded its attorney's travel costs.

*DeKort*[4] discusses travel expenses for *witnesses.* 2013 WL 1890283, at *5. There is no discussion in the case, nor request by the defendants seeking costs, to tax any attorney associated travel expenses. Therefore, this case has no bearing on Defendant's request.

---

[4]     The *DeKort* Court awarded more than $100,000 in costs. The extreme costs awarded in that case were based, in part, on the plaintiff's culpable behavior, which included giving "affirmatively false and misleading testimony regarding the origin of his knowledge of the facts underlying his FCA claim and may have alleged facts in his Fifth Amended Complaint for which he had no good faith basis to believe were actually true and correct." 2013 WL 1890283, at *2.

The facts in this case are markedly different from the egregious conduct in *DeKort*.

In *Castillo*, the court mentions that the defendant is seeking "court reporting costs, travel costs, reproduction and support costs and miscellaneous expenses." 2010 WL 5298179, at *2. With no further discussion, other than noting the plaintiff's improper attempt to reconstitute its business in an attempt to manufacture jurisdiction, the court categorically grants the defendant's motion. *Id*. This is not an opinion on which the Undersigned can rely as a basis to determine whether travel costs are appropriate in this case.

Moreover, the size of Defendant's travel costs appears to be the creation of the Defendant's choice in counsel. Defendant is a Michigan-based company. [ECF No. 7]. Attorneys Thomas Azar and Stephen A. D'Aunoy are Missouri-based lawyers. [ECF Nos. 16; 17]. This lawsuit was brought in Florida. As a result of this geographic reality, Defendant's lawyers were required to engage in interstate travel any time they needed to meet with witnesses, conduct depositions, or attend hearings. It hardly seems just to require opposing counsel to bear the cost of Defendant's decision to hire counsel who were neither local to its place of business nor the jurisdiction in which suit was brought.

Moreover, if Defendant were to have prevailed on the merits, then it would be prohibited from taxing travel expenses under § 1920. *See, e.g., Easterwood v. Carnival Corp.*, 19-cv-22932, 2021 WL 3473184, at *7 (S.D. Fla. Aug. 6, 2021); *Butler v. Wright*, No. 806CV165T17TBM, 2010 WL 599387, at *8 (M.D. Fla. Feb. 16, 2010) ("[A]ttorney's travel expenses, are not recoverable under § 1920."); *Fernandez v. Elder Care Option, Inc.*, No. 03-

21998, 2006 WL 8445932, at *2 (S.D. Fla. June 9, 2006) ("[A]ttorney travel expenses are not taxable . . . ."). In fact, in this circuit, travel costs can be categorized and recovered as attorney's fees. *Evans v. Books-A-Million*, 762 F.3d 1288, 1298-99 (11th Cir. 2014) (recognizing that travel expenses are not recoverable under § 1920 but may be recoverable under ERISA's fee-shifting provision); *Allen v. Freeman*, 122 F.R.D. 589, 592 (S.D. Fla. 1988) ("[Travel costs] are out-of-pocket expenditures by plaintiff's attorney, and are recoverable only in an award for attorney's fees . . . .").

It would not be just to force Plaintiff to bear the costs associated with Defendant's decision to obtain counsel who would need to travel for nearly every action taken in the case. Moreover, this cost would not be recoverable had Defendant prevailed on the merits. § 1919, the only applicable cost-shifting statute in this situation, does not allow for the recovery of attorney's fees, which is the category in which travel expenditures are usually placed. Accordingly, the Undersigned **respectfully recommends** the District Court **deny** all travel costs, a total reduction of $16,692.59.

### iv.   Reproduction/Delivery Costs

Lastly, Defendant seeks an additional $3,391.84 in costs it alleges were incurred for "printing, copying, reproduction, and court delivery charges that were necessary and incurred for use in this case." [ECF No. 262-1, p.2]. Along with this declaration, Defendant includes what it refers to as "a verified spreadsheet detailing the date and exact charge for each set of copies made." [ECF Nos. 262-1; 264]. Plaintiff states these costs should be

denied because Defendant "provides no evidence concerning how the copies and exemplification were used, why they were necessary, in what context they were used, or any information at all." [ECF No. 263].

The invoice provided by Defendant is a chart broken up by date, cost, and description. By way of example, Defendant's chart includes the following entries:

| 11/05/18 | | 0.72 | For reproduction charges |
| 11/05/18 | | 1.28 | For reproduction charges |
| 11/06/18 | | 0.72 | For reproduction charges |

[ECF No. 262-1, p. 10]. The only categories listed are "For Reproduction Charges" and "For Delivery Charges." [ECF No. 261-1, pp. 10-37].

Defendant claims its provided evidence "is exactly the evidence this [d]istrict has repeatedly held sufficient to support the award of such costs" and cites the following cases: *Mendelson v. City of Fort Lauderdale*, No. 08-61729, 2010 WL 2991423 (S.D. Fla. July 9, 2010); *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328 (S.D. Fla. 2009); and *Woods v. Deangelo Marine Exhaust Inc.*, No. 08-81569, 2010 WL 4116571, at *11 (S.D. Fla. Sept. 27, 2010). Defendant's cases do not strengthen its position.

The *Mendelson* Court did not elaborate on what counsel provided in support of its costs motion, stating only that "the defendants have provided sufficient information to demonstrate that the copies and transcripts were necessarily obtained for use in the case."

2010 WL 2991423, at *1. While the *Mendelson* Court's analysis is unhelpful in deciphering what level of description is necessary to determine whether copying is justified, it does give an example of what is insufficient: "[B]illing records which merely list 'copies' or 'photocopies' without any description of the nature or purpose of the photocopying [are] insufficient." *Id.* at *1. Defendant, despite relying on this case in support of its request, has run afoul of the *Mendelson* Court's warning and provided information much like that which the *Mendelson* Court deemed insufficient.

*Monelus* is unhelpful because, while the court notes that the defendant provided more information than Defendant provides here, it bases its ruling, in part, on "the lack of objection from [the plaintiff]." 609 F. Supp. 2d at 1336. Unlike the plaintiff in *Monelus*, this plaintiff is objecting to copying costs.

*Woods*, in contrast, provides an example of what is *actually* needed from the party seeking costs. Although the *Woods* Court stated the party seeking costs was not required to explain the purpose of each copy made, earlier in the opinion it summarized the plaintiff's explanation of its costs:

> Plaintiffs maintain that none of the copies were made for the mere convenience of counsel. Rather, they note that during the discovery phase of the case, Defendant made available for inspection approximately forty (40) bankers' boxes and twenty (20) filing cabinets of documents. Plaintiffs used a vendor, Ikon, to copy documents selected during discovery, as well as exhibits and over-sized manufacturing drawings for trial. Plaintiffs also used another vendor, Kauff's Signs, to prepare oversized presentation boards for trial.

2010 WL 4116571, at *10 (internal docket citations omitted). Defendant here has not provided a similar explanation justifying its costs.

At bottom, the information Defendant provides is too limited and vague to enable the Undersigned to evaluate the reasonableness of the charges. The Undersigned has no way of knowing (other than relying on the vague and conclusory declaration) whether the charges are duplicative, for convenience, unnecessary, or otherwise related to the case. *Sensormatic Elec. Corp. v. Tag Co. US*, No. 06-81105-CIV, 2009 WL 3208649, at *9 (S.D. Fla. Oct. 2, 2009) ("The party seeking to tax costs for copies must provide evidence regarding the documents copied including their use or intended use." (internal quotations omitted)).

Accordingly, the Undersigned **respectfully recommends** the District Court **deny** all copying costs and reduce Defendant's awarded costs by $3,391.84.

## IV.    Conclusion

For the reasons stated above, the Undersigned respectfully recommends that Judge Cooke **grant** Defendant's motion in part and **deny** it in part, and award it **$4,056.75** in taxable costs ($62,111.42 less than the requested amount).

## V.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days

of the objection. Failure to file objections timely shall bar the parties from a de novo

determination by the District Judge of an issue covered in the Report and shall bar the

parties from attacking on appeal unobjected-to factual and legal conclusions contained in

the Report except upon grounds of plain error if necessary in the interests of justice. *See*

29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d

790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on October

1, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
Marcia G. Cooke
All Counsel of Record